Morning. Welcome to the Fifth Circuit in the unusual way we welcome people these days from afar. We have three arguments today and we have saved no doubt the best for last and that would be you two. The case is Hugh Dickson, co-liquidator versus Proskauer Rose. Mr. Grossman, we'll hear yours. I'd like to reserve five minutes for rebuttal. Certainly. Mr. Grossman, before you start on your argument, maybe you would have started this way. Proskauer filed a Rule 28J letter on the 18th of November saying that because the Eastern Caribbean Court of Appeals had dismissed your client's action against Proskauer that this case is moot, this one and the related case. What's your response? Your Honor, I was actually going to reach that just now. In response to the, and there's no doubt, and Proskauer had every right to file that paper, the Eastern Caribbean Court ruled against our client and affirmed the trial court there. We have filed our motion for the Eastern Caribbean Court of Appeals itself. They have to give leave to appeal further to the Privy Council. There is a process that if that was denied, you can request the Privy Council to take jurisdiction directly, although that's very unlikely. We asked our folks in Antigua what is the expected timeframe. Their expectation is the hearing on our request for leave to appeal will be heard probably in February, and the expectation is that would take them about two months or so to rule on that request, either granting leave for further appeal or denying it. And if further appeal is granted, how much time are we talking about? The Privy Council acts at their own pace. I have at least my limited experience in cross-border cases is that it be up to a year for them to decide it because they have a briefing schedule at the Privy Council and then they may have oral argument, although that's rare. Of course, I've got to, I won't avoid the pun of saying you could just simply say you're not privy to that information, but do you agree that if this ruling is upheld, ultimately that that moots what we're doing today? Yes, Your Honor. I think it moots both appeals as a, just as a matter of law. There's no further claim that could be pursued. I don't know if Proskauer has a different view. They may decide they want to go back to Judge Godby and ask for fees and costs or sanctions, etc., etc. I don't know. You'd have to ask my opposing counsel on whether he thinks it's moot. From our perspective, we would be done. So should we just wait instead of trying to render a decision, wait and see what happens in the Eastern Caribbean Court and the Privy Council or whatever it's called? From our perspective, Your Honor, that would be fine. I guess the only concern we have is that that if we are successful in overturning the decision that somehow stepping foot in the United States, even for unrelated activities, would be considered a jurisdictional fact. But we've already given that advice to our client. I mean, we just have to be practical about these things. All right, counsel. Thank you, Your Honor. More of your argument, but somewhat related, I suppose. What is being litigated by the liquidators in Antigua that is not already subject to what's going on in federal court in the United States? If you're talking about how close were the claims that were brought in both jurisdictions, they were very close. There's no doubt. You're avoiding the word identical. Could they be seen as identical? We took issue with that notion that Judge Godby said they were identical. They obviously arise from the same nucleus of operative facts. They are the same relationship that Proscar had to the bank. But the causes of action are, of course, different, slightly different, because two different jurisdictions, different common law, different notions. Is there some claim, Mr. Grossman, that as an Antigua chartered, I suppose, institution, the SIB limited, would have claims regarding activities in Antigua that are not subject to the SEC and the Chapter 15? In the broader scope, the insolvency estate has brought claims that we think would not be available in the United States at all. We have done so. There are lawsuits pending all around the world. But as far as this claim against a law firm for its activities, those are already being, you're not saying there are separate claims you would have in Antigua as to those. There are, in fact, well, there were, in fact, I don't believe there's any pending law firm claims. At the beginning of this long saga, there were multiple law firms that had either been sued by one or both of us. Well, let me just ask, limited to what we're talking about today, and the law firm I see standing up in the picture there, or at least its representative, are there any claims in Antigua that would be separate from what's being raised against that firm now in the United States? Your Honor, again, the relationship was the relationship, the relationship between the law firm and the bank. So any cause of action that was brought in Antigua that looks different than what it was in the United States would be part, would be the vagaries of each jurisdiction applying its own law. So for instance, in the United States, when you sue a law firm, you sue in tort, but in most common law countries, you sue both in tort and in contract. So those are the kinds of differences, but there's no doubt that these were based upon the same relationship. However, Judge, I do want to point out that this is par for the course in international insolvency cases. This is exactly why we went into Chapter 15, which is congressional policy, to ask for cooperation and coordination. We went into to file our Chapter 15 petition for recognition. We were granted only non-main. We took that on appeal, and we settled the appeal by doing the cross-border protocol. And as Judge Gabi held objected to the cross-border protocol because it contemplated and anticipated that there would be two different claims, two different lawsuits in two different places against the same defendant. But Judges, I want you, I want to be very practical here. It's not like Proskauer didn't know what to do because Chadbourne and Park, another law firm that got sued by both the receivership of state and by the insolvency state, settled with both the states and got approval from both judges. My clients report only to their judge, who they were appointed by, just as the receiver is, you know, his boss is Judge Gabi. So, from our view... Let me ask you to flesh this out just a bit on what's going on in the United States. Is there any argument on your side that the SIBL is not a party to the receivership action, or at least are subject to the jurisdiction of the courts in the United States? No, Your Honor. It appears that the bank would have had sufficient minimum contacts in the SEC versus the bank to give it jurisdiction. It is actually a party? Is there any doubt that it is actually a party? It would be a defendant in the SEC action, as the plaintiff was the SEC. So, it would be a defendant in that lawsuit, and it is, in fact, an entity over whose assets and liabilities the receiver was given control. The word party creates all kinds of normative discussions about what does that mean in the case law, which... I understand you want your desire for precision. Now, you are the joint liquidators of that institution, correct? You are the joint liquidators of the insolvency estate of which the entity, its assets and liabilities comprise. Well, you've tried awful hard to say you don't fit within Rule 65 language, 65D of being an agent or whatever else is there. You say that's a matter of Antigua law to figure out what that relationship is, which I guess I can accept, but you're saying that you don't fall under the jurisdiction of the court because of your relationship to the insolvency estate. Is that correct? That's correct, Your Honor. And if you think about it, it would be the same if it was a Chapter 7 bankruptcy trustee in the United States, regular domestic law on this. So, for instance, a Chapter 7 bankruptcy trustee is not an agent of the debtor. It's exactly the opposite. The Chapter 7 trustee does not take direction from the debtor. In this case, the argument, you have to put a practical view towards this. The bank has no employees. It has no board of directors. It has no president. It has no officers. It acts solely through its court-appointed representative. In the United States, it's the receiver. And everywhere else outside the United States, it is the joint liquidators. Agency, regular common law notions of agency, we all agree, have to do with control. The principle controls the agent's actions. The joint liquidators do not take any direction from the receiver, the SEC, or the bank. Of course, there's nobody at the bank to give direction. It takes no direction from them. It takes its only direction from the Antiguan court. And that's the same for the receiver. The receiver would not be an agent of the entity that he was appointed over. He doesn't take direction from the bank. He only takes direction from Judge Godby, who is the appointing court. So the word agency in Rule 65 is just an ill fit. Aiding and abetting is also an ill fit, because aiding and abetting presupposes that there's somebody else as the primary actor, and that the person who is aiding and abetting is the litigation. It's because of this that we're not a Rule 65 agent or aider and abetter. This is why Judge Godby, in his order, describes in the cross-border protocol the recognition that we are distinct entities. That's in the order. We are distinct entities. It's not, to be clear, it's not like Proskauer didn't have an avenue. They could have tried to settle with both the if it really wanted to, it could have filed a foreign anti-suit injunction action, which is the jurisprudential avenue that these things have been done before. You go to the judge, you file an adversary, because we're in the Chapter 15, you file an adversary, and you ask for a foreign anti-suit injunction. Well, one of the elements of a foreign anti-suit injunction is international comity. Well, we already had a preview of that when we filed the cross-border protocol motion, asking for permission to enter into this cross-border protocol, which contemplated, as Judge Godby found, distinct entities bringing separate actions even against the same defendant. Proskauer objected, the judge overruled the objection, approved the cross-border protocol. We're entitled to rely upon that cross-border protocol, which is an avenue, this reliance in this cross-border protocol is an avenue that should not be ignored for personal jurisdiction. After all, even the Waffen-Schmidt case that Proskauer relies upon, even its double-pronged analysis, it first says, well, we can skip international shoe, we're going to go directly to inherent power. Even there, it distinguishes cases where the defendant has an independent interest. It distinguishes the Hayman case. This is on page 718 of that decision. It distinguishes it by saying, well, in Hayman, they had a distinct interest. We have a distinct interest. Our distinct interest was granted by our court. Proskauer actually filed the pieces of paper by which our client was appointed and vested with the assets of the bank. Therefore, we have our own independent interest. Moreover, if you did a traditional international shoe analysis, the second prong of international shoe is fair play and substantial justice. Can't be fair play for us to enter into a cross-border protocol that contemplates we're going to bring a separate action and then have the parties to the cross-border protocol, the receiver, the SEC, the Department of Justice was in it because it was a forfeiture piece, and the examiner and the committee all enter into an agreement by which it says we're distinct and we can bring our own claims against the very same people. It cannot be fair play and substantial justice to then say, well, a few years later, we're going to ignore that notion and enter an injunction preventing you from doing the very thing that you said was contemplated and everybody understood could happen. And at least not to do that without a notice and an opportunity to defend it on the grounds of what's being requested, which would have been a foreign anti-suit injunction. So from our perspective, no matter which way you read Waffen-Schmidt, whether you think it still survives the Supreme Court basically destroying every other theory of personal jurisdiction other than international shoe, remember Justice Brennan tried stream of cases we learned from law school, Henson and Schaefer, those are all dead. International shoe is now, should be the mantra. But even if you decided there was some kind of separate non-international shoe analysis as per Waffen-Schmidt, even Waffen-Schmidt says if you have an independent interest, that doesn't apply then because you cannot be held in contempt and you would not be enjoined because you have an independent interest. Even in Waffen-Schmidt, in that discussion, talks about these pre-gene factors, which is from another case, none of those would have upheld it here either. All right, Mr. Grossman, thank you. Thank you. You saved some time for a bottom. May it please the court. James Rohanda on behalf of Proskauer. I just want to address initially the 28J letter. We actually in that letter did not argue that this issue was moot. And in fact, their attempt to seek leave to appeal is violating the bar of orders. And so I would respectfully submit that waiting isn't really a violation because there isn't an option here if our position is correct, that they're violating in violation of bar orders because pursuing the appeal, continuing to pursue the appeal, they've been in violation since the day we informed them that the bar order was final and that they should cease proceedings in Antigua. And they are still, as they just said, continuing proceedings. At the time we wrote the letter, we did not know whether they had appealed or not. That was not served on us until afterwards. Let me ask you, Mr. Rohanda, let's say the case ended, not this one, but the one in Eastern today. What would be left in this case for us? Nothing. Would there be a need to send this back to district court to deal with, as Mr. Grossman hypothesized, some other claim you may have for their actions they have taken until today? Well, I hesitate to ask because we haven't the enforcement of the bar order would be, you know, they wouldn't be in continuing violation of it. And we would seek costs that are allowed in Antigua. Whether we would seek costs here would be another question. But the point is, by continuing, at the time we asked them to stop and they failed to and we moved for contempt, the appeal that we won hadn't been argued yet. We were forced to go down to Antigua to hire a UK council and spent a lot of time and effort and money in a case that is barred. And it is the same entity. It's the claimant, S-I-B-L, that is the claimant in their statement of claim at the record of Mr. Rohanda. I just want to understand the answer to Judge Southwick's question then is that if that case were final today, there'd be nothing left of your claim. Is that right? Right. Well, they would not be in continuing violation of the bar order. That's correct. And that notion was to hold them in contempt for failure to do that. And that's what you're seeking is to have them found in contempt. Yes. All right. It is the same entity. It's on the statement of claim, record of appeal 13926. Their statement of claim is in the record here. It's brought, the claimant is Stanford International Bank Limited and is brought acting by and through the joint liquidators. And S-I-B-L is bound by the, in a party to the bar order. There's no question that it's the same claimant and the same claims. What we're dealing with here is on their notice of appeal, they argued that our motion, our notice of motion that we were filing a contempt motion, which we filed in the bankruptcy proceeding, that the court shouldn't have denied that as moot. That's easily dispensed with because the district court's denial was proper. It had denied our contempt motion. It didn't need to address whether it was proper for us to put a notice on the filing of the Chapter 15 proceeding. And the important, the reason I say that is that that appeal of the mootness ruling is a Trojan horse. What they're trying to do and what they say in their statement of appeal and what they go forward and argue in their briefing is a collateral attack on the scope of the bar order. And that is obvious from their appeal brief and they are prohibited from doing so because before the bar order was entered, the district court set a time to object and said that if you fail to object, you're forever barred from seeking to direct or collaterally attack it. And the joint admit they had notice of the settlement agreement and the proposed bar order prior to its entry. And they simply waived the ability to challenge it. They had noticed and they did not object to it. We raised that. And that waiver is self-executing by the bar order itself. And we raised it in connection with their appeal in our responsive brief that that was a complete waiver. They also argued that the joint liquidators waived any objection to the bar orders. Once again, when they failed to respond to that contempt motion, they never actually responded to it. Instead, they filed this notice of a motion to strike the notice that we had filed. But that was a second waiver, their failure to oppose our motion below. And the court shouldn't consider those arguments, which were not filed in the arguments that they made on their in their motion to strike were not even filed on the relevant dockets and were not in opposition. And also, when the court considers when a court considers whether somebody has violated an order, that also doesn't bring into question the validity of the underlying order. So where we're left is that the appeal should be denied because we'll relief they're seeking is they're barred from seeking by the bar order and by their failure to object to the bar order. We also moved to dismiss the appeal, though, and that is a very straightforward grounds. They won below. Our contempt motion was denied. They're not aggrieved. And the court refused to grant that motion. It's black letter law. They have no standing to appeal. The court declined to enforce the bar orders for lack of jurisdiction. We believe that's an error, but they are not asking to revert the court's judgment. Well, but as I understand that the judge's ruling has some collateral damage for lack of the precise term against the liquidators, because the judge basically said there's no claim against your firm and then but then went on to rule on a different in a different fashion. Correct. And that what they're trying to do is not reverse the judgment. They don't like reasoning. They're trying to amend the opinion, not the judgment, the prejudicial effect. They claim that they may claim there is no prejudicial effect. They're present in the United States. They have been present in the United States. And let me just turn to that issue, because as an initial matter, they also they were in this case, they also failed to respond to our appeal and they didn't file an opposition motion. And we said in our reply brief on the motion to dismiss, we said, you know, they're free to intervene in the Jan V appeal, which we understood the court said we should be prepared to address today. And before we even filed an opening brief, we said, you know, we served we we we we served them with our opening brief. They acknowledge service. And then after they missed the deadline, we asked them, we said, please confirm that you don't intend to file an opposition. They wrote one sentence back, confirmed. And then this court asked us to amend the caption to add them directly as appellees, S.I.B. and the joint liquidators and actually gave the joint liquidators another 30 days to respond. And they simply ignored that deadline. And so what really is at issue here is the personal jurisdiction question that Mr. Grossman discussed. And as an initial matter, federal district courts have the inherent power to enforce their orders against those who have notice of those orders and violate those orders. That is plainly the case here. The bar orders barred the joint liquidator from bringing suit against Praskauer, and it should not have conducted a minimum context analysis. The the analysis under Waffen Schmitt, which is good law and has been applied in the Seventh International, violator of an order. It said it's the knowing violation of the order on notice that brings the contender within the personal jurisdiction of the of the court. And I think this is an extremely important principle to protect the authority of and the inherent power of district courts, because the court in Waffen Schmitt said, you know, we don't we're not relying on quote traditional personal in person of jurisdiction analysis. Those who ate in a better party. And here the party is S.I.B. and the haters and betters of the joint liquidators. If you ate in a bet that party that places in violation of a court order with knowledge of that court order that quote places they themselves within the personal jurisdiction of the district court. And that is the it also the court said that it forms the basis for the district court's proper exertion of personal jurisdiction when you violate the order on notice. And the circuit said in that case, this fulfills this is fair. It fulfills traditional notices of notions of fair play and substantial justice because it's foreseeable if you violate a federal district court's order, knowing of that order, it's fair that you could be called into that and be required to respond in that forum. And that's what the Fifth Circuit said in that case. And nonetheless, the judge below went on and connected a minimum context analysis. And he erred again. I mean, first, he erred completely by not even mentioning S.I.B. S.I.B. else the same entity because I've said jurisdiction over over the claimant. They were a settling party in the bar order. And he had jurisdiction over them. The decision completely ignores that. And that was error. But the other thing is, when he applied the minimum context analysis, the court simply ignored the extensive evidence that's in the record, some of which he mentioned in his actual decision, because what happened is they they brought the cross-border protocol. They went in with the receiver to the district court in the SEC action, not just the bankruptcy court. They go into the SEC action and they say, we want you to approve our settlement agreement. That's what the cross-border protocol is. And then the court and they asked for approval of that. The court only gave them approval. The court only gave them approval after this colloquy, which is at 14221 of the record. If I approve the settlement as it currently exists, are the joint liquidators going to take the position that I have pre-authorized litigation in Antigua? The answer, no, your honor, the court, I want to be sure that I heard you correctly. I will not hear from you or anyone else on behalf of your clients that I by approving this settlement, I have pre-authorized litigation in Antigua or the British Virgin Islands against law firms. And the answer again was, no, we're not going to, you will not, your honor, was the answer. And so they got a protocol, which we didn't need to object to or I mean, which we didn't need to appeal. It was a settlement agreement and we got the relief we wanted, which was they were not authorized to bring a case against us. But they asked for and got the court's approval. And then right after that, they came to the United States and we know this and it's in the record. They came to the United States with the joint liquidators and started rooting around for evidence. They went to, and this is in their fee application of the, filed in the receiver action that they were led around and obtained documents. And a month later, in 2013, they show up in their statement of claim. So what they did is they got approval from the court, they say, to bring a case or to do whatever. It's not authorized, but they weren't prohibited from doing it. They collect evidence in the United States. So they're asking the district court for permission outside the bankruptcy court for permission to do what they're doing. They collect the evidence and then they use it to frame their complaint. It's hard to imagine a more clear case of minimum context of satisfying the minimum context requirement. Mr. Rehonda, let me ask you, you're certainly correct to give us as much as possible to show the reach of this bar order to the joint liquidators. Let us put Wofford Smith aside, as well written as it is and superb judge writing it, who's not on this panel in case you forgot. But nonetheless, taking it to a foreign country may be a step that we don't need to take in this case. And there has been some rejection of it, the extension of it, as well as questions about its validity in the first place, though we can't question it. Just looking at the fact that SIB is already a party, a defendant, and the receiver action is in this country, looking at Rule 65D, what is your best argument that that makes the liquidators in a foreign country of that institution, of that bank, subject to the bar order? They aided and abetted the violation of the bar order. So, under Rule 65, if you aid and abet and assist in the violation... I'm not using Wofford Smith. I'm just using international issue and whatever else on minimum context. The mere fact that what they are liquidating is in this country as a party. I mean, you have made the argument, I thought in your briefing, that they're in the nature of an agent or some other label and that that is that the contacts are through the bank or through SIB. Is that not part of your argument? Yes. Part of the argument is that they are an agent, but they were also in active concert or participation with a party, that party being SIB, and that privity exists when you do that. So, we think they were an agent. They acted in concert or participation. They aided and abetted. And under Rule 65, they come within the authority of Rule 65, and there is jurisdiction. You make this Chapter 7 trustee analogy. Well, I think that's incorrect because I think there is a Chapter 15 procedure proceeding, and we're not arguing that that in and of itself gave jurisdiction, general jurisdiction. We're arguing that even if you set aside the Chapter 15 proceeding, look at all the things that they did to all their contacts with the forum. And on the one hand, they're saying, it's very interesting. They say, we like what they call the court's order. They call the cross-border protocol as an order. We like that order. We're asserting it in this court. The court then enters a subsequent order in the same proceeding that says you're barred. SIB is barred forever from bringing a claim. They don't like that order. They can't on the one hand argue that they don't have jurisdiction when they want to take advantage of a court's order. And then even though that order is superseded, same judge, same proceeding, and the claims are barred, they want to invoke that. And I would also so argue that Woff and Schmidt, it's important, the Homa case in the Seventh Circuit applied the case in circumstances that are identical here. There, the violations occurred outside the U.S. And the court discussing Woff and Schmidt said, you know, didn't limit it to the U.S. jurisdiction and said, those who violate federal district court orders from outside the U.S. with knowledge of them are within the jurisdiction of the court. So we do think that that is still good law, and good law in this through a minimum context analysis, we think that they lose. I would also argue that on this, that SIB, it's very interesting, just on the SIB issue, there's not much that needs to be done there, right? SIB is the barred party. They can't act on behalf of SIB, the bank, which is the as the claimant in the Antigua proceeding, and is named as a plaintiff in our proceeding. So it's the same identical entity, and it was barred by the court. And the court said, it's the same, acting on behalf of the same party, bringing the same claims. There's no difference in the same claims. They're asserting the same claims down there as they are here. In fact, in the 28J letter, and in the earlier Judge Walbank's decision, Antigua, both those judges said that. Every judge who's looked at this has said, it's the same claims. Judge Godby did, Judge Walbank did, and the Eastern Caribbean Court of Appeals all said so. So I think in light of that, and in light of the waiver, because really what they're arguing, they're not contesting that, they won on the personal jurisdiction argument. The judge was incorrect, and he erred. But what they're trying to do is to really challenge the application of the bar order, and they're simply barred from doing that. They waived it. They waived it repeatedly. They waived it in this court by not objecting, but they also, it was self-executing. They knew of that order, and they violated it by continuing the action. Look, they can argue it was okay for them to bring the action, and they brought the action. But once the judge ordered a bar order, getting complete peace for prosecutor across the world, and issuing what was in effect an injunction, at that point, they had to cease and desist. And we wrote them a letter, which is in the record, and said cease and desist. They didn't. We brought up contempt motion, and the court erred in not realizing that the analysis of whether the, the critical point is the analysis of whether the bar order applied, and whether they had notice of it, which they don't contest, that was the personal jurisdiction analysis under Waffen-Schmidt and under the Homa case. And there was no need to more, but even if you look beyond that and peel the onion back, there is personal jurisdiction over a party that is invoking the court's orders, trying to get approval of an agreement, get documents to feed that claim, and then framing it in terms of a complaint. Those are all forum contacts that are directly related to the claim, and give this court, the district court, personal jurisdiction. Counsel, I, I ask you, the, the 11-28-18 letter, Rule 28 letter that you filed, my notes, you don't use the word moot, but that was my immediate reaction when I read the letter was, does this moot all of these appeals in our court? And tell us again why you feel it doesn't. Because what, what the violation of the order is continuing to pursue a claim against Proskauer, and they are in fact, continuing to pursue a claim against Proskauer, even the filing of a notice of appeal. It's not just the holding a, an attempt to, you know, getting a court to hold us liable, which no court has said there is a proper claim against us. It's pursuing that. I mean, we wanted complete peace. We're paying lawyers, we're traveling to Antigua, London would be next if they're not, if they're not barred from, if they're not held in contempt. And that is an injury to us. And it violates that conduct of pursuing the appeal, violates the bar order. Thank you. Let me ask you before you step aside, Mr. Honda, and I'll ask Mr. Grossman the same thing. It does seem to me with all respect to your friend on the other side, and perhaps the continuing effort to get what's then maybe that case really is at an end of the evaluation of the likelihood of success of continuing to pursue it is obviously something that client and that set of lawyers has to decide. Would it be at all helpful if we enlisted the aid of our office of mediation to contact you, and I'll ask Mr. Grossman the same thing, to try to resolve this? It does seem to me that whether we're at the end game or not is certainly to be evaluated by counsel. But if that is a fair estimate of where we are, is there a way to end this case to everybody's benefit? Would you be open to that, to our office of mediation contacting you, Mr. Honda? Well, I would never say no to that offer. I do think that there is absolutely, it's pretty close to nil, the chance that there would a resolution of that, because we feel like we got a bar order, and it's very important, courts can't settle cases without these bar orders. And we've paid, and I should say the other way they've subjected themselves to jurisdiction, they got money from our settlement. Their claimants are sharing in the settlement proceeds of this matter. So it's hard to see how it could be resolved without their just simply agreeing to drop their appeal, which they don't appear to be willing to do. One thing on your side that you responded earlier, either to Judge Barksdale or somebody else, is that the potential of something further being pursued in district court, even if you do completely succeed, whether it's some sort of attorney's fees or something else, or it sounds like the door may not be completely closed. Well, I raise that, we'll see where that goes. Thank you, Mr. Honda, for your argument. We'll hear Mr. Grossman in rebuttal, and if you want to start with responding to what I asked your fellow person on the video. When a court suggests mediation, I always say yes, because you never know what happens in mediation. So how wide are your parentheses, but ain't going anywhere, closed frames? I didn't say that either. Obviously, each side has uncertainty, perhaps more on our side than on their side. But I never say no, it's certainly far easier in the pandemic world to do mediations, no matter where you are in the world, you can appear. So we would have no objection to being sent to mediation if that's the court's prerogative. Why don't you turn to your rebuttal now? Thank you, Your Honor. So I do want to pick up on, there's two points that I'd like to make here. The first is, remember, there are now two different estates. There's always been two different estates. There's a receivership estate, and there's an insolvency estate. I would ask this court, because Judge Godby recognized the international comity aspect of it. Chapter 15 is congressional policy, embodying international comity, when there are insolvency estates in two different jurisdictions. Remember, this case may not be the last time these kinds of issues come up. And it may not be, it always depends on whose ox is being gored here, right? If the Antiguan court was to issue a bar order, barring the receiver, to continue to take actions in the United States, I would think the receiver would be outraged by that kind of conduct. So we just always have to remember in these cases of international comity, it is in fact the discussion of nations. This is why Chapter 15 existed, which came from the UNCTAD model law. A whole bunch of countries have signed onto it to stop these kinds of conflicts. I do want to respond to this notion that somehow we waived all of these things. What Proskauer is saying is that we were obligated to submit ourselves to the personal jurisdiction of the court to argue that the bar order doesn't apply to a lawsuit that, I didn't say Judge Godby said, he pre-authorized it, but he didn't prohibit it. That was Mr. Rojanda's words. He didn't prohibit it. It was contemplated. Everybody knew it was a possibility. It then occurred, we filed the lawsuit, and this idea that we would then have to come submit ourselves to jurisdiction in the district court in order to enforce the very cross-border protocol that we had already negotiated and settled. Mr. Rojanda says, well, you should have intervened in the appeal, in their appeal. Well, if you want to look at the actual motions that were filed and the motions to dismiss, we offered a suggestion that said, look, we're happy to file a merits brief on the personal jurisdiction in your appeal, as long as you would stop yourself from arguing that that's now a new jurisdictional fact. If you look at Proskauer's brief, everything we did anywhere, anytime it touched the United States, they say is a jurisdictional fact. Minimal context doesn't work that way under international shoe. It has to relate to the cause of action. The only cause of action that Proskauer is asserting is a breach of the bar order. Everything that Proskauer talked about occurred in 2009, 2010, 2011, all the way up to 2013. None of these things are post-bar order conduct, which would be the only claim that you could have a nexus to for specific jurisdiction. Moreover, what did we do? The only thing we did was not do something in a foreign country. So I do want to take up the Waffen-Schmidt and the other cases that have ruled on Waffen-Schmidt thereafter. Mr. Rohanda cites the SEC versus HOMA case out of the Seventh Circuit. If you read that case, what was also important to Judge Posner, in fact, uses the phrase in the sentence, more importantly, comma, the actors were U.S. citizens, and then cites an old U.S. Supreme Court case that allows American courts to reach out to U.S. citizens anywhere in the world. So that was a distinguishing factor. In the Fourth Circuit, they said Waffen-Schmidt and HOMA, they're both wrong. That's the Hawkins case that we cited because it was conduct that occurred outside the United States. I do want to come lastly back to this whole idea of Rule 65, because obviously, Judge Southwick, that was important to you. Aiding, you do not aid in a bet of violation. You aid in a bet a person. So the only person they're suggesting, the person was the bank. So we didn't aid in a bet the bank. We control the litigation was the point I made earlier. So we didn't aid in a bet anybody else. We control the litigation, and we took our own conduct. We didn't act in concert with anybody. We made our own decisions under the supervision of our judge. And the privity notion, if you read the Chipotle case, we don't fit under any of the definitions of what it would be to be in privity with an alleged partner. Thank you, Your Honor. All right, counsel. Thank you very much. If you go to London, let us know. We might like go with you. But otherwise, that is it for today. We are in recess.